UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**ROBERT OLMSTEAD,**

        **Plaintiff,**

    **-v-**         **7:12-CV-1225**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Legal Aid Society of Northeastern New York
Victoria M. Esposito, Esq.
17 Hodskin Street
P.O. Box 648
Canton, New York 13617
Attorney for Plaintiff

Dennis J. Canning, Esq.
Special Assistant U.S. Attorney
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
Attorney for Defendant

**Hon. Norman A. Mordue, Senior District Judge:**

# MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

On October 22, 2007 plaintiff filed an application for supplemental security income ("SSI"), claiming disability beginning August 1, 1992. The application was initially denied on May 6, 2008. Thereafter, plaintiff filed a written request for a hearing, and a hearing was held on January 25, 2010 before Administrative Law Judge ("ALJ") Marie Greener. On March 19, 2010, the ALJ issued a decision denying plaintiff's claim for benefits. (Tr. 10-24). The Appeals

Council denied plaintiff's request for review. Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, asking the court to reverse the Commissioner's decision to deny her application for disability benefits. Presently before the Court are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 14, 15). For the reasons set forth below, the Court concludes that the Commissioner's decision should be reversed and the matter remanded for further proceedings.

## DISCUSSION

### A. Legal Standard

The Social Security Act authorizes payment of disability insurance benefits or SSI benefits to individuals with "disabilities." To be considered disabled, a plaintiff must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1832c(a)(3)(A). The Commissioner uses a five-step process to evaluate disability insurance and SSI disability claims:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

A Commissioner's determination that a claimant is not disabled will be set aside when the

factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

**B.     ALJ's Decision**

The ALJ found that plaintiff had not engaged in substantial gainful activity since the application date. (Tr. 12-13). The ALJ further found that plaintiff's borderline intellectual functioning, depressive disorder, generalized anxiety disorder, and substance abuse and dependency were severe impairments. (Tr. 13-15). The ALJ then considered whether plaintiff's impairments met the severity of the listed impairments. (Tr. 15-17). Explicitly considering listings 12.04, 12.06 and 12.09, the ALJ concluded that plaintiff's impairments did not meet the requirements of the listings. The ALJ also considered, based on counsel's argument, whether plaintiff met the requirements of mental retardation under listing 12.05, and concluded that he did not. (Tr. 17, 13-15).

The ALJ next found that plaintiff had the residual functional capacity to perform work at all exertional levels, but when his substance use disorders and other mental limitations were considered, he "is unable to interact at all with supervisors, co-workers, or the public" and is limited to simple occupations "with one or two step tasks which are not complex and which do not require complex decision making or supervising others and performing routine daily tasks and duties in the same workplace which do not si[g]nificantly change in pace or location on a daily basis." (Tr. 17).

In making this determination, the ALJ considered opinion evidence from consultative examiner Richard Williams, Ph.D, state agency psychiatrist Dr. Alpert, social worker Jill Taulbee, Daniel Jenack, R.P.A.-C., Joseph Lamb, P.A., and consultative examiner William Kimball, Ph.D. The ALJ noted that Dr. Williams concluded that even if plaintiff was able to get his moods stabilized and decrease his paranoia, he would still have trouble working in jobs that required reading or math skills, but also observed that Dr. Williams found that plaintiff is able to handle his funds. The ALJ then discussed Dr. Alpert's[1] findings, that plaintiff has the ability to carry out work procedures with a consistent pace, interact adequately with coworkers and supervisors, and adapt to changes and handle stress in the workplace. The ALJ reviewed Ms. Taulbee's conclusion that plaintiff was not capable of working in any capacity at that time, but would eventually be able to work part time until he was comfortable, then full time, and Mr. Jenack's conclusion that plaintiff was not capable of working in any capacity at that time, and it was unknown when he could return. Mr. Lamb, who treated plaintiff for physical ailments concluded that he had no physical limitations but that he is unable psychologically to interact with others secondary to his mental health. Finally, the ALJ analyzed Dr. Kimball's conclusions regarding plaintiff's many marked and severe limitations, and his difficulty focusing and concentrating. After reviewing these opinions, the ALJ found that plaintiff has no past relevant work, and that considering his age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that plaintiff can perform because he cannot meet the basic mental demands of competitive, remunerative, unskilled work–including

---

[1] The Court notes that in a number of sections, the ALJ's decision refers to a "Dr. Apacible," but after reviewing the entire record, the Court found no records from a Dr. Apacible, and concludes that the ALJ meant to refer to Dr. Alpert.

the ability to respond appropriately to supervision, coworkers and unusual work situations. Accordingly, the ALJ found that, when considering plaintiff's substance use disorder, a finding of "disabled" would be appropriate.

The ALJ then went through the same 5 step analysis assuming plaintiff stopped the substance use. The ALJ concluded that his borderline intellectual functioning, depressive disorder and generalized anxiety disorder would still be severe impairments. She further found that he still would not have an impairment or combination of impairments that meet the listings. The ALJ determined that if plaintiff stopped the substance use, he would still have the ability to perform work at all exertional levels, and would have the ability to "understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and unusual work situations; and deal with changes in a routine settings." He would still be limited to simple occupations, as described in her earlier RFC determination. In making this determination, the ALJ considered plaintiff's testimony regarding his symptoms–that he is disabled because of anxiety and other symptoms because he has difficulty dealing with people and gets frustrated and cannot focus and his mind wanders–finding that his impairments could reasonably be expected to produce some of his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of the symptoms are not credible. The ALJ discussed plaintiff's activity level noting that he currently lives alone but previously lived with a girlfriend, and, during that time, cooked many meals for his girlfriend and her children. He shops, walks the dog, and walks in the woods. The ALJ also noted that although it did not constitute disqualifying substantial gainful activity, plaintiff reported working on and off for seven years. The ALJ then addressed plaintiff's statements to doctors regarding his substance use and found that they left the

impression that he had been less than entirely candid, and some of the assessments may have been based upon faulty information if the providers were not aware of his substance use. The ALJ then went on to discuss plaintiff's treatment records, observing that Mr. Jenack encouraged him to cut down on his cannabis use. The ALJ noted that in many treatment notes, plaintiff reported that his medications were doing a good job, but that despite Mr. Jenack's recommendations, plaintiff did not have an interest in stopping his cannabis use, stating "he has been using it right along and doing very well with it." (Tr. 21). The ALJ further noted that Mr. Jenack told plaintiff that he would stop prescribing his medications if he continued to use cannabis, and that plaintiff tested positive twice after being told that he needed to stop.

The ALJ determined that the opinion of Mr. Nelson, L.M.S.W., was entitled to little weight because although he found that plaintiff's disabling condition would continue to be marked or severe if he stopped using drugs and/or alcohol, the limitations were "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." (Tr. 22). The ALJ further based her decision to assign the opinion little weight on the fact that Mr. Nelson is not an acceptable source of medical opinion under the regulations. Likewise, the ALJ noted that Ms. Taulbee and Mr. Jenack are not acceptable medical sources, and "do not take into consideration the claimant's residual functional capacity absent substance abuse," and therefore afforded their opinions little weight. The ALJ also gave little weight to the opinions of Drs. Williams and Kimball "because these opinions do not take into consideration the claimant's residual functional capacity absent substance use." The ALJ rejected the opinion of Mr. Lamb because he is not an acceptable medical source and because his opinion on plaintiff's mental capacity "appears to rest at least in part on an assessment of impairments outside" his area of

-6-

expertise. Finally, the ALJ stated that Dr. Alpert's assessment may be an overstatement of plaintiff's abilities, but concluded that it provides "further support" for her RFC determination.

As with the previous analysis, when she considered substance use, the ALJ found that plaintiff has no past relevant work, and that his ability to perform work at all exertional levels would still be compromised by nonexertional limitations. However, if plaintiff stopped the substance use, the ALJ determined that the nonexertional limitations that remain would "have little or no effect on the occupational base of unskilled work at all exertional levels," and therefore found a finding of "not disabled" appropriate.

**C.    Issues In Contention**

Plaintiff argues that: (1) the ALJ applied an incorrect legal standard when considering Listing 12.05 (Pl. Br. at 24-25); and (2) the ALJ improperly weighed the evidence (Pl. Br. at 20-24).

**1.    Listing 12.05**

Plaintiff argues that the ALJ applied an incorrect legal standard in considering Listing 12.05, arguing that the ALJ should have considered plaintiff's low Verbal Comprehension Score, and should not have required a formal diagnosis of mental retardation before age twenty-two.

Under the regulations, a plaintiff suffers from mental retardation if he exhibits "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part A, § 12.05. Further, "[t]he required level of severity for this disorder is met when" plaintiff has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment

imposing an additional and significant work-related limitation of function." *Id.*

As an initial matter, as defendant states, Dr. Kimball, who performed the IQ tests at issue, did indicate a number of times in his assessment that plaintiff's scores might be lower due to his low frustration tolerance. Moreover, although plaintiff's verbal score was 68, an IQ score of 60-70 is not conclusive of mental retardation. *Outlaw v. Barnhart*, 197 F. App'x 825, 827 (11th Cir. 2006). Indeed, an ALJ is permitted to reject an IQ score as invalid when it is inconsistent with the record so long as she explains the basis for that decision. *See Paulino v. Astrue*, 2010 WL 3001752, at *22 (S.D.N.Y. 2010) (citations omitted). The record contains an earlier set of IQ testing, performed by Dr. Williams, which demonstrates much higher scores – a verbal IQ of 72, a performance IQ of 97, and a full scale IQ of 81.

Additionally, no treating or examining source who evaluated plaintiff's cognitive faculties found that he suffered from mental retardation. Indeed, even Dr. Kimball who performed the testing on which plaintiff received scores in the 60s did not diagnose plaintiff as mentally retarded. Despite plaintiff's low IQ scores, Dr. Kimball concluded that plaintiff has borderline intellectual functioning and not mental retardation. These conclusions appear to be consistent with the overall record. The ALJ provided sufficient rationale for finding that the scores were inconsistent with the other evidence in the record, and failing to give significant weight to the scores, relying instead on the complete evaluation rather than the test results alone.

Based on this Court's review of the record and the ALJ's decision, it does not appear that the ALJ required a formal diagnosis of mental retardation prior to age twenty-two as plaintiff suggests. Further, the ALJ did consider plaintiff's low IQ scores, including the Verbal Comprehension Score referenced by plaintiff, but concluded, based on the entire record that

plaintiff did not meet the requirements of Listing 12.05.

### 2. RFC Determination

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence. (Pl. Br. at 23).

A plaintiff's RFC is the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citation omitted). In determining RFC, the ALJ can consider a variety of factors, including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments. 20 C.F.R. § 404.1545(a).

When there is medical evidence of an applicant's drug or alcohol abuse, the inquiry does not end with the five-step analysis. *Cage v. Comm'r*, 692 F.3d 118, 123 (2d Cir. 2012). "An individual shall not be considered . . . . disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." *Cage,* 692 F.3d at 123 (citation omitted). Accordingly, if the ALJ finds that the plaintiff is disabled utilizing the standard sequential analysis, and there is medical evidence of the plaintiff's drug addiction or alcoholism, the ALJ must then determine whether he would still find the plaintiff disabled if he stopped using drugs or alcohol. *DiBenedetto v. Colvin*, No. 5:12-CV-1528, 2014 WL 1154093, at *2 (N.D.N.Y. Mar. 21, 2014). As part of his general burden to prove

that he is disabled, the plaintiff bears the burden of proof to show that his drug addiction or alcoholism is not material to his disability. *See Cage*, 692 F.3d at 123-25.

As described above, here the ALJ undertook this second inquiry, and made two RFC determinations–one where plaintiff's substance use was considered a severe impairment, and a second considering whether he would have the same nonexertional impairments without his substance use disorder. In the first analysis, the ALJ found plaintiff disabled. Therefore, the issue here is whether substantial evidence supports the ALJ's conclusion that, but for his substance use disorder, plaintiff would have had nonexertional impairments preventing him from working. The Court agrees that the ALJ's decision is not supported by substantial evidence.

The ALJ stated, in conclusory fashion that "[t]he record shows that the claimant's disabling mental limitations are associated with substance abuse. His mental status improves when he complies with treatment. However, the record reveals that the claimant failed to follow-up on recommendations made by Daniel Jenack, R.P.A.-C., and continued to use cannabis despite warnings that it would affect his treatment." (Tr. 21). Similarly, the ALJ concluded that "the record supports a finding that if the claimant stopped using cannabis, treatment would be generally successful in controlling his symptoms." (Tr. 22).

The ALJ described plaintiff's treatment records in detail and then concluded that absent drug use, plaintiff's remaining nonexertional limitations would have little or no effect on the occupational base of unskilled work. However, while the ALJ states that plaintiff's drug use contributed to plaintiff's symptoms, and that he would improve without drug use, the Court is unable to determine what record evidence supports this conclusion. The ALJ fails to explain how plaintiff improved without drug use, or how his symptoms were worse when using drugs. Indeed,

many of the positive comments that she includes in her decision were made when he was using drugs. For example, on September 25, 2008, plaintiff reported that his medications were doing a good job, and when encouraged by his provider to stop his drug use, reported that "he has been using it right along and doing very well with it."

Additionally, no doctor ever attributed plaintiff's symptoms to substance abuse. No doctor ever opined that plaintiff's symptoms would improve without drug use, or that they were worse with drug use. There is also no evidence that plaintiff was not compliant with his medications when he was using drugs. There are no notes in the record that indicate that when plaintiff abstained from drug use, his condition improved. Indeed, as plaintiff points out, Dr. Kimball examined plaintiff while he was not using drugs, and still found marked to severe limitations in numerous areas of functioning. Although the ALJ assigned this opinion little weight finding that it did not take into consideration plaintiff's residual functional capacity absent substance use, it appears that during this time plaintiff was not using drugs.[2] Dr. Kimball examined plaintiff on January 16, 2010. (Tr. 292-302). The record contains the results of a negative drug test on December 1, 2009, and a February 2010 document from Mr. Nelson, plaintiff's therapist states that plaintiff reports having stopped using marijuana in the fall of 2009. (Tr. 304, 303). This is consistent with the positive drug test in August 2009 and plaintiff's desire to continue receiving medication from Mr. Jenack. (Tr. 248). Similarly, Mr. Nelson, plaintiff's therapist opined that even absent cannabis use, plaintiff was still unable to function in a work setting. (Tr. 303). Again, the ALJ assigned this opinion little weight, stating that it was

---

[2] It is true that plaintiff told Dr. Kimball that he did not use drugs, and the ALJ was free to use plaintiff's failure to provide an accurate history when evaluating plaintiff's credibility.

-11-

conclusory and provided little explanation.  However, the opinion is on a form that asks specific questions which were answered by Mr. Nelson, and the court notes that Mr. Nelson was plaintiff's therapist and therefore, his opinion is likely based on Mr. Nelson's interactions with plaintiff during the months he was not using drugs.

While it is true that Mr. Jenack continually encouraged plaintiff to stop his drug use, and informed him that it could interfere with his medications, the treatment notes do not contain any information based upon which the Court could conclude that the medications were not working, or that Mr. Jenack observed worsening symptoms when plaintiff was using drugs. Improvement when not using drugs could constitute substantial evidence to support a determination that a plaintiff would not be disabled were he or she to discontinue alcohol and/or drug abuse, *see Cage v. Comm'r*, 692 F.3d 118, 127 (2d Cir. 2012), here, however, the ALJ has not connected those dots.

The Court further notes that when finding that plaintiff would be "disabled" if substance use was considered a severe impairment, the ALJ appears to have relied on the medical opinions in the record.[3]  However, it is these same opinions to which she assigned "little weight" in the second part of her decision–where she considered whether plaintiff would still be disabled absent his drug use.  It is therefore unclear what changed in her analysis of these opinions from the first portion of her decision to the second.

Finally, the court notes that at the time of the hearing, plaintiff was apparently not using drugs.  However, he still testified that he has no hobbies, does not have any friends, does not take

---

[3] The Court notes that this is not entirely clear given the fact that the ALJ did not specifically assign any of the providers opinions a weight during this part of the decision. However, she discussed their opinions and then concluded that plaintiff was disabled.

any classes, and does not use the computer, and spends most of his time walking with his dog in the woods. (Tr. 50-51). Additionally, with respect to the ALJ's conclusion that plaintiff's work activity demonstrates that he is able to maintain a reasonable functional level, the Court observes that while plaintiff did work off and on, these jobs appear to have ended as a result of fights with his bosses. (Tr. 38-39, 40, 41-42). Moreover, he appears to have been working alone in these positions.

The Court therefore concludes that the ALJ's RFC determination is not supported by substantial evidence.

**D.    Remedy**

Sentence four of 42 U.S.C. § 405(g) provides that "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." *Kirkland v. Astrue*, 06-CV-4861, 2008 WL 267429, at \*8 (E.D.N.Y. Jan. 29, 2008). In light of the errors discussed above, it is recommended that the case be remanded for further proceedings consistent with this decision.

**CONCLUSION**

For these reasons, it is therefore

ORDERED that the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) is DENIED; and it is further

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is

GRANTED; and it is further

ORDERED that the Commissioner's decision is reversed and this matter is remanded; and it is further

ORDERED that the Clerk of the Court is directed to enter judgment for plaintiff.

IT IS SO ORDERED.

Dated: Syracuse, New York
December 30, 2015

*Norman A. Mordue*
Senior U.S. District Judge